## THE CITY OF EAST ST. LOUIS

*v.*

## THERESA ALBRECHT *et al.*

*Filed at Mt. Vernon June 19, 1894.*

1. SPECIAL ASSESSMENTS—*for improvement already made.* A city can not, by accepting and adopting an improvement of a street, compel property owners to pay for it by special assessment or special taxation. The statute does not contemplate that the city council shall go on and make the improvement, and after it is completed levy and collect a special assessment or tax to pay for the same.

2. The first step to be taken in making a local improvement to be paid for by special assessment, is the passage of an ordinance specifying the nature of the proposed improvement, and the mode in which the cost thereof shall be collected; and until such ordinance is passed, as required by the statute, no work can be done or expense incurred which can become a charge on the property of the land owner.

3. Where the improvement has been ordered by ordinance, and the assessment has been annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made as provided in section 46 of article 9 of the City and Village act. In such a case the existence of an ordinance when the work was done is the basis of the re-assessment; and even when the original ordinance proves defective, and insufficient to support an assessment, yet if not absolutely void it may be amended, or the defect cured by a supplemental ordinance, and a re-assessment made.

APPEAL from the County Court of St. Clair county; the Hon. W. H. KROME, Judge, presiding.

Messrs. CONKLING & GROUT, and Mr. F. G. COCKRELL, for the appellant.

Mr. JESSE M. FREELS, and Mr. CHARLES P. KNISPEL, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was an application by the city of East St. Louis for confirmation of a special assessment to pay for improving Broadway, one of its streets. A former assessment for the same purpose was before us at a previous term, and held invalid, the opinion being filed January 24, 1891. (*St. John et al.* v. *City of East St. Louis*, 136 Ill. 207.) On the 12th of June following, the city council passed an ordinance, under which this assessment was made, which, on objection by appellees, the court below refused to confirm.

The principal question raised by the objections filed is, whether the ordinance of June 12, 1891, is sufficient to authorize the assessment. It is entitled "An ordinance for the grading, paving and sewering of Broadway, of second St. Clair subdivision of the city of East St. Louis, and for the payment of said work." It then recites, that whereas the city council had, on the first day of June, 1889, passed an ordinance known as No. 583,—setting out the ordinance at length, and the proceedings had thereunder to the confirmation of the assessment reviewed in *St. John* v. *East St. Louis, supra.* It also recites, that, whereas, ordinance No. 586 was afterwards passed, which partially changed and interfered with carrying out the character of said improvements as originally contemplated by ordinance No. 583, etc., stating the manner in which it so interfered; and further recites: "And whereas, by reason of the change above named, Broadway, of the second St. Clair subdivision, has been, in compliance with the provi-

sions of ordinance No. 583, paved in the center thereof forty-eight feet in width from the easterly line of Third street to the southerly line of the St. Clair county turnpike, as provided in said ordinance No. 583, and by reason of the change therein caused by said ordinance No. 586, from the west line of Third street has been paved sixty-four feet in width, west a distance of twenty feet, and from thence west has been paved fourteen feet in width on each side of said viaduct approach for a further distance west of one hundred and twenty-four feet, and from this point to the easterly line of the right of way of the St. Louis, Alton and Terre Haute Railroad Company fifty-six feet in width, except on the space covered by said stone pillars, and all the rest of the work provided for in ordinance No. 583 having been done, carried out, performed and completed in conformity with and as shown by the maps, profiles, plans and specifications of said work on file in the office of the city clerk of said city, and bearing the same number as this ordinance; and whereas, all of said work has been done by the city in good faith, and in contemplation of the collection of a special assessment, to be levied as provided in sections 18 to 48, inclusive, of article 9 of an act of the General Assembly of the State of Illinois entitled 'An act to provide for the incorporation of cities and villages,' approved the 10th day of April, A. D. 1872, and the amendments since made thereto; and whereas, the cost of said improvement, completed, as shown upon the plans, maps, profiles and specifications on file in the office of the city clerk, as aforesaid, has been $51,800.40, of which sum the city, by general taxation and out of its general revenues, has paid the sum of $12,827.60, including the sum of $2142 which was assessed against it by said commissioners, and the further sum of $23,096.59 having been paid into the city treasury by property owners, as shown in this ordinance, and by the city paid out upon the cost of the improvement shown by said plans, maps, profiles and specifications, which sum was paid by the following own-

ers of the following described lots, blocks and parcels of land, to-wit: * * * and there now being a balance of $15,876.21 still due and unpaid upon the improvement described in the plans, profiles, maps and specifications above referred to and on file in the office of the city clerk, and bearing same number as this ordinance, which work was done by the city in good faith, and in contemplation of the cost thereof being paid by special assessment, as provided by law; now, therefore," etc.

After these statements of what had already transpired, it proceeds:

"*Be it ordained by the City Council of the City of East St. Louis:*

"Section 1. That the local improvement made on Broadway by grading, paving and sewering, as shown upon and by the maps, plans, profiles and specifications of said completed work now on file in the office of the city clerk of said city, and bearing the same number as this ordinance, be and the same is here adopted, accepted, and its completion in the manner actually done, ratified by the city of East St. Louis."

Section 2 provides that the improvement shall be paid for by special assessment on property benefited, and by general taxation. Section 3 orders the assessment to be made under proceedings in accordance with sections 18 to 48. Section 4 appoints a committee to estimate the cost of the improvement, and also provides that "said committee shall also ascertain and report, in writing, the additional cost, if any, of the changes made in this improvement from that originally contemplated in ordinance No. 583. Said committee shall also ascertain and report, in writing, what amount has been paid by the city, if any, upon the complete improvement specified in section 1 of this ordinance, and the amount which has been paid in on said improvement by the owners of the property heretofore assessed under ordinance No. 583, and the actual amount which is necessary to pay the balance due for said

finished improvement, together with the cost of the assessment proceeding herein provided for."

It will thus be seen that this ordinance does not pretend to authorize the grading, paving and sewering the street, for the payment of which it attempts to levy a special assessment. It simply adopts and accepts the improvement theretofore made, and at the same time shows on its face, as was held in the *St. John case*, that the ordinance under which the work was done was invalid. It shows on its face that all that part of the improvement west of Third street was made without any ordinance whatever authorizing the same. We held in the *St. John case*, that whatever authority had been given for paving that part of Broadway by ordinance No. 583, was taken away by the adoption of No. 586. Moreover, as is shown in that case and is recited in this, ordinance No. 583 did not authorize any such improvement as was actually made from Third street west.

The question presented, then, is, can a city council, under our statute authorizing the making of local improvements by special assessment or special taxation, by accepting and adopting improvements made without being authorized by ordinance, compel property owners to pay for them.

In *City of Carlyle* v. *County of Clinton,* 140 Ill. 512, after citing sections 1, 2, 17 and 19, we said : "From these sections of the statute it is apparent that when a city undertakes to make a public improvement, the cost of which they expect to raise by special assessment or special taxation, the first step to be taken is the passage of an ordinance. The ordinance lies at the foundation of the proceeding, and unless an ordinance is passed there is nothing upon which the proceeding can rest. Section 1 confers power to make local improvements by special assessment or special taxation, as the city authorities shall by ordinance prescribe. This language does not contemplate that the city council shall go on and make the improvement, and, after it is completed, levy and collect

a special assessment or tax to pay for such improvement. Moreover, section 19 in plain words declares, whenever the local improvements, in whole or in part, are to be made by special assessment, the council shall pass an ordinance to that effect, in which shall be specified the nature, character, locality and description of the improvement. This language is plain, but in this case it was disregarded. The improvement was made without an ordinance, but after it was completed an attempt was made to comply with the law by the passage of an ordinance, not to make an improvement, but to pay for one already made. In addition to the sections already referred to, section 20 requires the committee appointed to estimate the expense, to make an estimate of the cost of the improvement contemplated by such ordinance; and section 22 declares the petition addressed to the county court shall recite the ordinance for the proposed improvement. These sections of the statute are plain, and all point in one direction,—that the first step to be taken when a local improvement is to be made, and to be paid for by special assessment or special taxation, is the passage of an ordinance by the city council. Until an ordinance is passed, as required by the statute, no work can be done or expense incurred which can become a charge on the property of the land owner."

That case is decisive of this. Here, as there, an ordinance is passed, not to make an improvement, but to pay for one already made. One of the controlling reasons for requiring an ordinance to be passed prior to making the improvement is, that from the nature, character, locality and description of the same, which the statute requires every such ordinance to specify, an intelligent estimate of the cost of the material, labor, etc., may be made, both as a protection to owners of property and as a restraint upon the municipal authorities. (*City of Carlyle* v. *County of Clinton, supra.*) It seems too clear for argument, that without overruling that decision, and the cases cited in support of it, and also that of *St. John* v. *City*

*of East St. Louis, supra,* the judgment of the county court refusing to confirm the assessment in this case must be affirmed, upon the ground that the improvement, for the payment of which it was levied, was never authorized by ordinance.

It need only be observed, this case is wholly unlike those in which it has been held that where the improvement has been ordered by ordinance, and the assessment has been annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made, as provided in section 46, article 9, of the City and Village act. In those cases the existence of an ordinance when the work was done is the basis of the re-assessment. Even where the original ordinance proves defective, and insufficient to support an assessment, yet, if not absolutely void, it may be amended, or the defect cured by a supplemental ordinance, and a re-assessment made. But no such thing is attempted in this case, or could be done. Here, after adopting an ordinance authorizing a certain improvement, the city council deliberately repealed it as to a large part thereof, and proceeded to make an entirely different improvement, and now seeks to enforce the collection of a special assessment to pay for the work by simply passing an ordinance adopting and accepting the improvement. To say that the city adopted and accepted the work or ratified what had been done, was an idle ceremony, and amounted to no more than approving its own act. The invalidity of the former assessment did not arise from a repudiation of or refusal to accept the work, but because property holders insisted that it was illegally done, and that contention was sustained by this court. That objection still remains.

The judgment of the county court will be affirmed.

*Judgment affirmed.*